## LOYAL PROTECTIVE INS CO v THOMPSON

Ohio Appeals, 2nd Dist, Franklin Co

No 2587.   Decided Feb 20, 1936

Arnold, Wright, Purpus & Harlor, Columbus, for plaintiff in error.

W. Kenneth Howell, Columbus, for defendant in error.

**OPINION**

By BARNES, PJ.

The petition in error sets out eight separate specifications of error but these are not followed in their exact form in brief of counsel for plaintiff in error, nor shall we so do. One of the first questions to be considered is whether or not the evidence as a whole would warrant the setting aside of the $50.00 settlement and release signed by plaintiff in connection therewith. Dr Strawsbaugh was called as a witness and had with him what he claimed to be the card index showing his notation as to any and all treatments and other statements as to the plaintiff, Elzie W. Thompson. Aside from his notations he did not have an independent recollection as to each and every visit. He was shown the written communication and thereupon stated that the same was not in his handwriting nor did he sign it. It was conclusively shown that the same was in the handwriting of his nurse and secretary. Dr. Strawsbaugh, interrogated from his notes, said that they would not warrant the conclusion that the plaintiff, Thompson, was suffering from rheumatism. Also that the few times that plaintiff was in the office before the first injury from his notes would not present

any diagnosis. The secretary to the Doctor was also called and testified that the communication was in her handwriting and that she made up same, at the Doctor's request, and from his notes; that the word 'rheumatism' wherever present in the communication was placed there at the suggestion of one of the adjusters.

The two adjusters in very logical manner gave full detail as to their recollection of all the incidents attending the procuring of this communication at Dr. Strawsbaugh's office and thereby present an issue of fact. Mr. and Mrs. Thompson also testified upon the question of sickness and rheumatism and gave very plausible testimony as to the occasion and reasons for his presence at the Doctor's office and thereby refutes the claim of a previous sickness or the presence of rheumatism. This is purely a jury question and the evidence is of such a character that the jury would be warranted in finding fraud in the procuring of the release.

The next question in regular order which gives us much concern is the state of the pleadings and particularly plaintiff's failure to offer to return the $50.00 received by him in settlement as a condition precedent to his right of action. Undoubtedly counsel for plaintiff was laboring under the impression that the character of fraud alleged in the petition was such that if proven it would render the receipt absolutely void and under such conditions no tender back would be necessary. In this conclusion we think counsel was in error although the petition states some ground of fraud not presented by the evidence. The case of **Manhattan Life Insurance Co. v Burke, 69 Oh St, 294,** is in point and determinative of this question. The first syllabus reads as follows:

"Where at the time of a compromise of a claim founded on a contract of life insurance, a dispute exists between the parties as to the liability of the company in any sum whatever, it denying that anything is owing, and an amount less than the claim is paid to the claimant in settlement of the controversy and he executes a full acquittance and release, and surrenders the policy, an action at law on the policy can not be maintained without a return or a tender of the amount received, even though the party's assent to the settlement was obtained by the fraudulent representations of the other party, and the amount received as the settlement is in the petition credited as a payment on the policy."

The second syllabus:

"Where in such case the contract of settlement is pleaded as a defense, a reply which simply alleges that the settlement was induced by fraud, but does not allege a payment or tender of the amount received, is not responsive to the answer, and is insufficient in law."

The trial court recognized this principle of law at the time of overruling motion for directed verdict, but based his overruling on the additional fact that in the instant case on application of plaintiff he had permitted the opening up of the case for the purpose of making the tender which then and there was made and refused.

While not free from doubt, we are inclined to follow this ruling of the trial court. We do so upon the view that under the then condition of the record it was within the sound discretion of the trial court whether or not he would permit the opening up of the case for the purpose of making the tender. In earlier days there is little doubt that this action of a trial court would have been considered prejudicially erroneous. For a number of years there has been the growing tendency to do away with hard and fast rules to the end that parties may have their day in court on the merits of their controversy. One of the serious questions in the instant case is the fact that plaintiff had failed to set out in his pleading the allegation of tender, and when resting his case in the first instance had failed in proof of tender.

Had there been present in the pleading this requisite allegation, there is ample authority supporting the right of the trial court to open up and permit the introduction of the omitted evidence. There is also authority under certain conditions to allow amendment of pleadings to conform to the facts. This latter rule by legislative enactment has been extended to include amendments after judgment. §11363, GC. In the annotations under this section of the Code. this right of amendment may be granted by the reviewing court.

Counsel for the Insurance Company in a very persuasive way distinguish what was done by the trial court in this case from reported cases where the case is opened up to introduce omitted evidence of facts so as to conform to the pleadings. In the instant case it was urged that the case was opened up to make facts, and thereafter present evidence of such facts. Specifically the claim is correctly made that at the time motion was made to direct verdict tender had not been made; that the opening up of case for purpose of making tender was then and there making facts that did not previously exist.

No direct authority is cited in support of this contention except as it might be inferred from the language of text writers and courts in announcing the rule that permits the opening up to introduce further evidence.

Under the facts of the instant case a tender and refusal to accept was a condition precedent to the right of having the agreement of settlement set aside.

Under the state of the pleadings plaintiff might have interposed motion for judgment at any time after the reply was filed. The reply was also subject to demurrer. Counsel for plaintiff was in error in assuming that the allegations of his reply were sufficient to have the settlement declared absolutely void. The facts stated did nothing more than present the question of a voidable agreement of settlement.

After the court on motion of plaintiff, permitted the opening up of the case so that tender might be made, and following such tender was refused, a state of facts existed warranting setting aside of the settlement agreement. The real question then is whether or not the procedure may be recognized under the law. We think §11364, GC, as amended in 1911, generally spoken of as the 'substantial justice section' is in point. The first three paragraphs of this section read as follows:

"In every stage of an action the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect. In the judgment of any reviewing court upon any petition in error or in civil action when it is sought to reverse any final judgment or decree or obtain a new trial upon the issues joined in the pleading such reviewing court shall certify on its journal whether or not in its opinion substantial justice has been done the party complaining as shown by the record of the proceedings and judgment under review."

The remaining paragraphs of the section are also pertinent.

It is our conclusion that the trial court's order of procedure was warranted on the ground of substantial justice, and certificate of such determination may be incorporated in the entry and thereafter spread upon the journal. The pleadings should

and may be amended to show tender and refusal to accept.

The next question of error raised is that there was no jury question presented on the issue of liability under the policy. Attention was called to the language of the policy creating liability for total or partial disability. This provision is contained in the first paragraph on the first page and reads as follows:

"Does hereby insure Elzie W. Thompson subject to the provisions and limitations hereinafter contained, endorsed hereon or attached hereto, against loss resulting from bodily injury effected directly or independently of all other causes by accidental means, and against loss resulting from disease originating after thirty days following the date hereof."

On the second page under the heading "GENERAL CONDITIONS AND PROVISIONS" the last two lines of Paragraph A read as follows:
"Only one indemnity shall be paid for disability resulting concurrently from accidental injury and from disease."

Under E starting at the beginning of a paragraph we have the following:
"Indemnity shall not be payable for death due to disease whether acquired accidentally or otherwise nor for injury unless same be the result of accidental means and not wholly or partly, directly or indirectly the result of disease."

In connection with, and supporting these provisions of the policy was cited the leading case of **Aetna Life Insurance Co. v Dorney, 68 Oh St, 151.** In the cited case it is determined that where the insured had a stomach ulcer which had punctured the stomach wall, and thereafter a membrane had grown over the hole, but left the stomach weak and rupture occasioned through the insured lifting a large stone, would not permit of recovery for the reason that the infirmity of the stomach wall was a contributing cause of such rupture. As we read the statement of facts in the reported case, the policy contained no provision for indemnity by reason of disease.

It is the claim of counsel for the Insurance Company that the facts of the instant case bring it squarely within the principles announced in the Dorney case, supra. More specifically, claim is made that plaintiff's hernia was the result of two causes—the previously existing weakness of his groin and the accidental falling of the door on March 27, 1933. In other words, that the accident was not the sole cause; was not the cause independent of all other causes; the weakened groin contributed to cause the hernia.

Under the state of the record we think there is still another element properly to be considered even if we grant to counsel the full force of his statement.

The plaintiff, Thompson, had a previous injury dated May, 1932, and for which disability benefits were paid in the sum of approximately $200.00. The pain in groin, near or at which point the hernia presented itself following the accident of March, 1933, was not present until after the accident of May, 1932. It therefore is fairly inferable that the pain or weakened condition following the first accident was the result of that accident, and not necessarily the result of disease. We find nothing in the policy preventing recovery wherein a latent weakness following a first accident may not be the basis of recovery, where a second accident brings it to the surface. Under such a situation pain or weakness would not properly be said to be the result of disease but rather the result of an accident and that following the issuing of the policy. The rule of law is well recognized that the language in an insurance policy will be construed most strongly against the company for the reason that it is their language and in no sense that of the insured.

Counsel for plaintiff advance the view that the evidence does not necessarily lead to the conclusion that the hernia was at the point of previous weakness and pain. Plaintiff in his testimony used the expression "near about." Also makes the further claim that the prolonged results from his last injury were due largely to his spraining the left hip. Plaintiff referred to that sprain as a re-sprain, meaning thereby that it was the same hip as was injured in his first accident. The use of the word 're-sprain' does not necessarily mean that it was the identical location or the same muscles, ligaments or bony structure, but even if the construction be given to this language that the straining of the hip was the result of a weakness following the first accident it would not come within the exception clause of the insurance policy.

Considering the record as a whole we find no prejudicial error. The judgment of the trial court will be affirmed.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.